# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JORDAN MOZER & ASSOCIATES, LTD.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 14-cv-10264** |
| | ) | |
| **v.** | ) | **Judge Ronald A. Guzmán** |
| | ) | |
| **GENERAL CASUALTY COMPANY OF WISCONSIN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

For the reasons stated below, Defendant's motion to dismiss [14] is granted in part and denied in part. Count IV is dismissed without prejudice. Counts II and III are dismissed to the extent that they seek monetary damages, but survive as claims for declaratory judgment.

## <u>STATEMENT</u>

Jordan Mozer & Associates, Ltd. ("Plaintiff") filed suit against General Casualty Company of Wisconsin ("Defendant") on December 22, 2014, claiming breach of an insurance policy. (Compl., Dkt. # 1.) This case is before the Court on Defendant's motion to dismiss Counts II, III, and IV of the complaint. (Mot. Dismiss, Dkt. # 14.)

## <u>Background</u>

Plaintiff is an architecture and design firm based in Chicago, previously operating out of an office on Ohio Street. (Compl., Dkt. # 1 ¶ 14.) In March and April of 2013, contractors performed sandblasting on the walls of a neighboring office in the same building as Plaintiff's

Ohio Street offices. (*Id*. at ¶ 17.) As a result of this sandblasting, Plaintiff's storage and office spaces were contaminated with lead dust and other debris. (*Id*. at ¶ 19.) This contamination forced Plaintiff to vacate the office space and relocate to another location, causing interruption of Plaintiff's business. (*Id*. at ¶ 20.) Plaintiff's damages from this contamination and subsequent move included $5,500,000.00 for direct damage to and loss of property, $1,966,610.00 in lost business income due to the interruption in operations caused by the move, and $2,429,612.00 in extra expenses necessary to continue operations at the new location. (*Id*. at ¶ 21.)

After the disruption to its business, Plaintiff timely notified Defendant of the losses it had incurred. (*Id*. at ¶ 22.) Defendant had issued a business insurance policy to Plaintiff covering the entirety of 2013, and this policy provided coverage for property loss or damage, loss of business income, and extra expenses. (*Id*. at ¶ 6.) The policy limit for physical loss or damage to covered property was $1,124,864.00 plus additional coverage and endorsements, and Defendant eventually paid the full policy limit amount for property damage. (*Id*. at ¶¶ 8, 24.) The policy did not contain a similar limitation on the amount of lost business income or extra expenses covered. (*Id*. at ¶¶ 10, 12.) Under the terms of the policy, lost business income and extra expenses are covered if they are incurred during the "period of restoration" and within 12 months following the date of the physical property loss or damage. (*Id*. at ¶ 39.) The "period of restoration" extends to the date when the business resumes at a new permanent location or to the date when the premises should be repaired, rebuilt, or replaced with reasonable speed. (*Id*. at ¶ 40.)

Defendant delayed processing and paying Plaintiff's claims until September 2013, and this delay prevented Plaintiff from resuming its business promptly. (*Id*. at ¶¶ 41-42.) Defendant's repeated insistence on multiple inspections, estimates, and inventories also prevented Plaintiff from fully moving into a new building and resuming normal operations. (*Id*. at ¶¶ 49-53.)

Knowing that it was partially responsible for the delay in resuming Plaintiff's business, Defendant assured Plaintiff that it would not restrict Plaintiff's lost business income and extra expense claims to the 12-month window and "period of restoration" requirement contemplated in the policy. (*Id*. at ¶ 54.) In reliance on these assurances, Plaintiff complied with Defendant's demands and delayed the move to its new premises until May 2014. (*Id*. at ¶ 56.)

Despite its representations, Defendant ultimately paid out only $441,609.00 for lost business income and refused to pay any amount for extra expenses covered under the policy. (*Id*. at ¶¶ 25, 34, 62.) Defendant justified the failure to pay these claims by relying on a flawed analysis by an accountant, claiming that the extra expenses were not caused by the covered property loss, accusing Plaintiff of failing to produce adequate proof, and strictly applying the 12-month cutoff for claims. (*Id*. at ¶¶ 81, 84, 86-87.) This failure to pay the claims in full caused Plaintiff to incur additional losses relating to taking inventory of property, setting up a replacement office, and securing third-party financing to fund the relocation costs. (*Id*. at ¶¶ 35-36.)

Plaintiff filed the instant suit seeking declaratory judgment and damages for breach of the insurance contract, waiver, estoppel, and promissory estoppel, as well as attorney's fees and penalties. (*Id*. at ¶¶ 88-122.)

**Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal where a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12. To state a claim, a complaint need only contain a short and plaint statement showing that the plaintiff is entitled to relief. *See EEOC v. Concentra Health Servs., Inc*., 496 F.3d 773, 776 (7th Cir. 2007).

In ruling on a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). A complaint may survive a motion to dismiss under Rule 12(b)(6) if it contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## Discussion

Defendant moves to dismiss Counts II (waiver), III (estoppel), and IV (promissory estoppel) of Plaintiff's complaint. (Mot. Dismiss, Dkt. # 14.)

*Count II & III: Waiver and Estoppel*

Count II alleges that it would be inequitable to let Defendant deny or limit Plaintiff's lost business income or extra expense claims, because Defendant represented that at least some categories of these claims were covered under the policy and acted as though these claims were covered by continuing to investigate them for over a year. (Compl., Dkt. # 1 at ¶¶ 97-103.) Count III similarly alleges that Defendant should not be permitted to deny the claims, on the grounds that Defendant's representations induced Plaintiff to rely on these representations to Plaintiff's detriment. (*Id.* at ¶¶ 106-110.) Plaintiff characterizes these counts as seeking declaratory relief. (Pl.'s Resp., Dkt. # 21 at 7) ("Counts II and III are claims for declaratory judgment, asking the

Court to declare that [Defendant] waived or should be estopped from asserting certain policy defenses or positions.") Plaintiff's complaint, however, also seeks an award of damages for these counts in the amount of Plaintiff's lost business income and extra expenses. (Compl., Dkt. # 1, ¶¶ 104, 111.)

Defendants move to dismiss both counts on the grounds that waiver and estoppel are affirmative defenses, rather than independent causes of action permitting independent recovery. Waiver and estoppel are typically raised as affirmative defenses by parties defending against the affirmative claims of others. *See Hartford Acc. & Indem. Co. v. D. F. Bast, Inc*., 372 N.E.2d 829, 831-32 (Ill. App. Ct. 1977) (defining waiver and estoppel as affirmative defenses). Illinois courts, however, have allowed waiver and estoppel claims to be affirmatively pled alongside breach of contract claims. *See, e.g*., *Payne v. Mill Race Inn*, 504 N.E.2d 193, 198-99 (Ill. App. Ct. 1987) (reversing lower court's dismissal of estoppel claim, and noting that while "equitable estoppel is usually asserted as an affirmative defense to a suit brought by another party…the complaint adequately alleged an estoppel against defendants' denial that a contract exists"). Courts in this district have similarly shown a willingness to address waiver and estoppel counts on the merits, particularly in the insurance context. *See, e.g*., *Chaudhry v. Provident Life & Accident Ins. Co*., No. 12 C 5838, 2014 WL 3511529, at *19 (N.D. Ill. July 16, 2014) (denying summary judgment on waiver and estoppel claims against insurance company, and noting that "[w]aiver and estoppel have similar effects in the insurance context; both prevent an insurer from belatedly asserting policy defenses"). Not only is such pleading permissible, it is in some sense mandatory; a plaintiff who fails to affirmatively plead waiver and estoppel claims may lose the ability to raise these arguments later. *See Elliott v. Inter-Ins. Exch. of Chi. Motor Club*, 523 N.E.2d 1086, 1089 (Ill. App. Ct. 1988) (holding that plaintiff could not raise estoppel argument

because "[u]nder Illinois law, both estoppel and waiver must be affirmatively pleaded or they are waived"); *Dayan v. McDonald's Corp.*, 466 N.E.2d 958, 977 (Ill. App. Ct. 1984) (affirming denial of permanent injunction, on the grounds that trial court properly rejected plaintiff's waiver and estoppel arguments where "plaintiff has waived these defenses by failing to sufficiently plead them"). Defendant has pointed to no authority suggesting that waiver and estoppel may not be pled in a complaint, and has failed to identify any cases in which courts have granted motions to dismiss such causes of action.

While these equitable defenses are properly pled to the extent that they seek declaratory relief, they also seek essentially the same monetary relief as the underlying breach of contract count. The Declaratory Judgment Act provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted," 28 U.S.C. § 2202, and such further relief can include money damages. *See Beacon Const. Co. v. Matco Elec. Co.*, 521 F.2d 392, 400 (2d Cir. 1975) ("It is well settled that 'further relief' may include an award for damages"). Nonetheless, damages are not an appropriate remedy for the waiver and estoppel counts asserted here. Plaintiff's entitlement to any payment from Defendant flows wholly from the existence of an insurance contract between them. While waiver and estoppel can prevent an insurer from raising policy defenses otherwise available to it, Illinois courts apply a general rule that these equitable doctrines "cannot be used to create primary liability or to increase coverage provided under an insurance policy." *Nationwide Mut. Ins. Co. v. Filos*, 673 N.E.2d 1099, 1103 (Ill. App. Ct. 1996). If Plaintiff were permitted to seek the same damages under the waiver and estoppel counts as under the breach of contract claim, Plaintiff would have a second bite at the apple even if liability were not proven under the insurance policy itself. For this reason, the Court grants Defendant's motion to dismiss Counts II and III only to the extent that they seek monetary

damages. Plaintiff may continue to assert these counts as independent causes of action only to seek declaratory relief.

*Count IV: Promissory Estoppel*

Count IV alleges that Defendant promised to reimburse Plaintiff for the extra expense claims and to be flexible with regard to the 12-month claims limitation, and that because Plaintiff reasonably relied on these promises they should be enforced. (Compl., Dkt. # 1 at ¶¶ 113-16.) Defendant moves to dismiss this count on the grounds that a contract existed between the parties, and promissory estoppel is therefore unavailable as a way to enforce the promise.

In Illinois, promissory estoppel is typically a method for enforcing promises that do not meet the requirements necessary for a valid and enforceable contract. *See Prentice v. UDC Advisory Servs., Inc.*, 648 N.E.2d 146, 150 (Ill. App. Ct. 1995) (referring to promissory estoppel as "a doctrine which is intended to permit recovery for promises which lack consideration"). Therefore, if a party's performance under a written contract is the same performance which satisfies the requirement of detrimental reliance, then that party is barred from seeking redress under the doctrine of promissory estoppel. *See Wagner Excello Foods, Inc. v. Fearn Int'l, Inc.*, 601 N.E.2d 956, 965 (Ill. App. Ct. 1992). A party is nonetheless permitted to plead breach of contract and promissory estoppel claims in the alternative, so long as the breach of contract and promissory estoppel counts seek the same relief for essentially the same conduct. *See Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc.*, No. 93 C 1539, 1993 WL 266548, *3 (N.D. Ill. July 15, 1993) ("To the extent that [the plaintiff] ultimately will not be able to prevail under both theories of recovery, it need not embrace one over the other at this earlier stage of the proceedings").

Plaintiff argues that its breach of contract and promissory estoppel counts are pled in the alternative, and that dismissal would be inappropriate before there is any determination regarding whether or not the parties had a valid contract. (Pl.'s Resp., Dkt. # 21 at 14-15.) This argument is unavailing, however, because Defendant has expressly admitted that the insurance policy constituted a valid contract. (Answer, Dkt. # 13, at ¶ 89) (admitting to the allegation that "the Policy is a valid and enforceable contract between GCC, as insurer, and Mozer, as insured.") The fact that Defendant alleges Plaintiff failed to fully perform its obligations under the contract does not amount to a denial of the contract's validity, particularly where Defendant has unambiguously admitted that the insurance contract existed and was valid and enforceable. Illinois courts make clear that where parties agree that an enforceable contract governs their relationship, it is not permissible to assert a parallel claim for promissory estoppel. *See Prentice*, 648 N.E.2d at 150 (affirming dismissal of promissory estoppel count, because "once it is established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties and therefore consideration exists, then a party may no longer recover under the theory of promissory estoppel"); *Wagner*, 601 N.E.2d at 965 (noting that promissory estoppel is not intended to "give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract").

Count IV is therefore dismissed. To the extent that Defendant changes its position and denies the validity of the contract during the course of this litigation, the Court may revisit this ruling and allow Plaintiff to replead the promissory estoppel count.

**CONCLUSION**

For the reasons set forth above, the Defendant's motion to dismiss [14] is granted in part and denied in part. Count IV is dismissed without prejudice. Counts II and III are dismissed to the extent that they seek monetary damages, but are not dismissed to the extent that they seek declaratory judgment.

**SO ORDERED.**                    **ENTERED:   April 24, 2015**


**HON. RONALD A. GUZMAN**
**United States District Judge**