IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORDAN MOZER & ASSOCIATES, LTD., an Illinois corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 14 CV 10264 ) ) Judge Ronald A. Guzmán |
| GENERAL CASUALTY COMPANY OF WISCONSIN, a Wisconsin corporation, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, the Court grants in part and denies in part the parties' motions *in limine* [64, 65, 66, 67, 69, 70, 71, 72, 73, 74, 75, 76] as detailed herein. The Court notes that the rulings are provisional and may need to change in the context of trial.

**A.      Defendant's Motions *in Limine***

**1.      MOTION *IN LIMINE* # 1: TO BAR EVIDENCE RELATING TO ALLEGATIONS OF VEXATIOUS AND UNREASONABLE DELAY**

The motion is granted in part and denied in part. Insofar as Defendant seeks to keep the issues of attorney's fees and statutory (punitive) damages from being submitted to the jury, the motion is granted. This is an issue for the Court to determine.

The motion is denied to the extent it seeks to keep from the jury evidence of how long it took Defendant to process Plaintiff's claims. Such evidence, while relevant to the attorney's fees and statutory (punitive) damages, is also relevant to several issues that will go to the jury, including whether the 12-month period of restoration governing Plaintiff's extra expense claim should be extended and whether the 12-month limitation period governing Plaintiff's business interruption/business income losses should be extended. Courts in this district and elsewhere have repeatedly held that such limitations periods should be extended where, as here, the insurer causes delays that prevent the insured from relocating or repairing or rebuilding its premises and resuming operations. *A&S Corp. v. Centennial Ins. Co.*, 242 F. Supp. 584, 587-88 (N.D. Ill. 1965) (period of business interruption extended through date reconstruction actually completed, where start of reconstruction delayed by insurer's delay in approving building plans). *See also LaSalle Bank, N.A. v. Paramont Props.*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008) (citing *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443-45 (7th Cir. 1992); *Gore v. Ind. Ins. Co.*, 876 N.E.2d 156, 161-62 (Ill. App. Ct. 2007)).

The length of time it took for Defendant to process Plaintiff's claim is also relevant to whether Defendant breached its implied duty of good faith and fair dealing. Evidence of breach of the implied duty will include: (a) GCC's slow processing of Mozer's claims; (b) GCC's failure to process or pay most of Mozer's business income claim; (c) GCC's delays in processing Mozer's extra expense claim; (d) GCC's refusal to pay those expenses while the claim was being processed; (e) GCC's insistence that Mozer could not pack or move to replacement premises until after multiple parties could make inspections of the insured premises and Mozer could complete an inventory of all of Mozer's artwork and other property, which took over a year; and (f) GCC's assurance to Mozer that it would be flexible and not restrict Mozer's business income and extra expense claims to the 12-month period following the loss or the "period of restoration" referenced in the GCC Policy, but would take the GCC-caused delays into account and deal fairly with lost income and extra expenses incurred afterwards, and Mozer's detrimental reliance on those assurances.

## 2. MOTION *IN LIMINE* # 2: TO BAR EVIDENCE RELATING TO EXTRA EXPENSES WHICH HAVE NOT BEEN INCURRED

Defendant seeks to bar two categories of expenses claimed by Plaintiff: (1) the value of time spent by Mozer employees on clean-up and relocation, and (2) other extra expenses that GCC claims have "yet to be incurred." According to GCC, the Policy expressly provides that it covers only those expenses that are actually "incurred" by the insured. Plaintiff's Extra Expense claim includes $1,207,591.25 reflecting the purported billable value of time spent by Mozer employees in activities relating to the relocation of Plaintiff's business. Defendant contends that Plaintiff was not obligated to pay and did not pay any employees over and above their salaries for these activities; thus, they have not been 'incurred' under the Policy. As to the $313,489.50 in costs characterized by Plaintiff as "yet to be incurred," Defendant asserts these are expressly excluded by the Policy.

Plaintiff responds that GCC's argument that the cost of Mozer's employee time was not "incurred" is: (1) barred by waiver and estoppel in that the evidence will show that GCC repeatedly told Mozer that its employees' time spent supervising the clean-up, relocating the business, and setting up Mozer's new premises would be covered as an Extra Expense and reimbursed on an hourly basis, without any qualification that those costs would not be covered because they were not "incurred;" and/or (2) the expenses are reasonably foreseeable consequential damages of GCC's breach of contract in refusing to pay the third-party relocation expenses clearly covered by the contract.

The motion to bar evidence of the aforementioned expenses is denied. Plaintiff may recover any reasonable extra costs (costs that it would not have incurred in the absence of the destruction of its premises) incurred in moving and restoring the premises, whether Plaintiff paid the cost of these expenses to its employees or to third parties. Plaintiff may present evidence of what these costs were and the parties' intent surrounding the provisions in the Policy that cover such expenses as well as any waiver or estoppel or breach of contract theory it proposes. Whether GCC's failure to pay for such services is a breach of contract that forced Plaintiff to

undertake the payments itself is a mixed question of fact and law for the jury, as are the issues of waiver or estoppel.

### 3 & 4.  MOTIONS *IN LIMINE* ## 3 & 4:  TO BAR EVIDENCE OF LOST BUSINESS INCOME OR EXTRA EXPENSES INCURRED MORE THAN 12 MONTHS AFTER THE DATE OF LOSS

Plaintiff seeks to recover damages relating to its lost business income arising out of the subject loss.  In that regard, the Policy provides as follows:

> **f.     Business Income**
>
> **(1)     Business Income**
>
> **(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered     Cause of Loss. . . .
>
> **(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or     damage. . . .

Plaintiff also seeks coverage for Extra Expenses, as to which the Policy provides as follows:

> **g.  Extra Expense**
>
> **(1)**     We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. . .    . . .
>
> **(4)** We will only pay for Extra Expense that occurs within 12   consecutive months after the date of direct physical loss or damage.

In its October 12, 2016 Order ruling on the parties' cross-motions for summary judgment, this Court held that evidence of GCC's delays in processing Plaintiff's claims, "if true, could justify an extension of the 12-month period [applicable to Mozer's Extra Expense claim]" and "[a]ccordingly, whether GCC unjustifiably delayed Plaintiff's claim such that the 12-month limitations period should be extended must also go to the jury." (Dkt. No. 61, at 7-8) (citing *G&S Metal Consultants, Inc. v. Cont'l Cas. Co.*, 200 F. Supp. 3d 760, 771-72 (N.D. Ind.

3

2016) (holding that a reasonable jury could find that the insurer's actions extended the "period of restoration" because of its delay in processing the claim)). In support of its ruling on the instant motion, the Court also refers to its ruling above on Defendant's Motion *in Limine* # 1.

     5.     **MOTION *IN LIMINE* # 5: TO BAR DOCUMENTS PRODUCED AFTER THE CLOSE OF DISCOVERY**

As ruled on by Judge Finnegan.

     6.     **MOTION *IN LIMINE* # 6: TO BAR EVIDENCE OF FINANCIAL STATUS**

Obviously, evidence of Mozer's "financial status" in terms of its lost income and extra expenses is relevant and admissible to support its damages claims. GCC offers no analysis or explanation as to why that evidence should be excluded, and it clearly should not be. Evidence of Mozer's financial status is relevant in other ways as well; for example, it could be used to show the significant loss of business income caused by the contamination events as well as Mozer's financial inability to relocate and resume operations in order to mitigate damages in the face of GCC's long delays. Therefore, Defendant's motion to bar evidence of Plaintiff's financial status during the relevant time period is denied.

As to GCC's financial status, Plaintiff has not set forth any theory under which GCC's financial status would be relevant to any issue at trial. Therefore, the motion to bar evidence of GCC's financial status is granted. Plaintiff is barred from introducing evidence of GCC's financial status without first raising the issue with the Court outside of the jury's presence.

     7.     **MOTION *IN LIMINE* # 7: TO BAR OFFERS OF SETTLEMENT**

The question of admissibility of any evidence of an offer of settlement is governed by Rule 408 of the Federal Rules of Evidence. While Rule 408 precludes evidence of a settlement offer "to prove or disprove the validity or amount of a disputed claim," it specifically provides that "[t]he court may admit this evidence for another purpose." Fed. R. Evid. 408(a), (b). It is clear that the evidence that supports a finding of compensatory damages for a violation of the implied covenant of good faith and fair dealing is the same in many cases as the evidence that would support a finding of statutory (which have replaced punitive damages in insurance cases) damages for vexatious and unreasonable conduct under 215 ILCS 5/155. Thus, evidence of unreasonably low settlement offers is admissible to show bad faith.

Therefore, this motion is denied.

     8.     **MOTION *IN LIMINE* # 8: TO BAR NON-PARTY WITNESSES FROM THE COURTROOM**

This motion is granted.

**9. DEFENDANT'S MOTION *IN LIMINE* # 9: TO BAR TESTIMONY THAT THE EXTRA EXPENSE PROVISION IN GENERAL CASUALTY COMPANY OF WISCONSIN'S POLICY IS AMBIGUOUS *and* PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE ARGUMENT THAT PLAINTIFF'S EXTRA EXPENSE CLAIM IS EXCLUDED FROM COVERAGE**

Insofar as Defendant's Motion *in Limine* # 9 seeks to bar testimony that a provision in a Policy is ambiguous, the motion is granted. There is no need for any witness to testify as to whether a term is ambiguous, as that is an issue for the Court to decide. For the same reason, there is no need for the attorneys to use the term "ambiguous" in addressing the jury. The Court's instructions will inform the jury as to what it must decide and how it should go about doing so.

As to Plaintiff's motion *in limine* to preclude Defendant from arguing that Plaintiff's Extra Expense claims are excluded from coverage, Defendant is permitted to argue that particular claimed expenses are not covered. However, Defendant may not argue that extra expenses are not covered due to the interplay between the Extra Expense and Covered Property provision, which is a matter of law. Because the Policy is ambiguous with respect to how these two provisions are to be interpreted, as a matter of law, such ambiguities are resolved in favor of the insured. Thus, the existence of the arguably overlapping clauses is not a per se bar to recovery under the Extra Expense provision, and no such argument can be made to the jury. As already noted, the jury will decide on an item-by-item basis whether any particular item is covered under the Extra Expense coverage clause.

**10. MOTION *IN LIMINE* # 10: TO BAR CERTAIN OPINIONS OF WILLIAM POLASH RELATING TO LOST RETAIL SALES**

William Polash has estimated that Mozer experienced $1,067,555.00 in lost retail sales between March 2013 and August 2015 as a result of the dust incident. Defendant contends that this calculation, and the related opinions, are baseless, speculative and unreliable and, thus, should be barred.

The motion to bar Mr. Polash's estimate of lost retail sales is denied. The only objection raised is to the reliability of the data which Mr. Polash used in forming his opinion, which can be challenged on cross examination, but is not a basis for barring the expert's opinion. *See Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 809 (7th Cir. 2013) (stating that the quality or sufficiency of the data used by an expert "is a question for the jury, not the judge," and cannot provide the basis to bar an expert's testimony).

**B. Plaintiff's Motion *in Limine* to Exclude Legal Opinion Evidence**

Plaintiff moves to exclude, as pure legal conclusions, defendant's attorney Thomas Hofbauer's opinions on coverage issues. Federal Rule of Evidence 702 allows an expert to provide testimony only if the testimony will help in understanding the factual issues in the case. "A well-settled corollary is that the Rule does not contemplate expert assistance on legal

questions." *RLJCS Enters. v. Prof'l Benefit Tr., Inc.*, No. 03 C 6080, 2005 WL 3019398, at *3 (N.D. Ill. Nov. 8, 2005). Generally, opinion testimony purporting to construe the terms of an insurance policy or an insurer's coverage obligations consists of "legal conclusions" and is thus inadmissible under Federal Rule of Evidence 702. *Scottsdale Insurance Co. v. City of Waukegan*, 689 F. Supp. 2d 1018, 1022-23 (N.D. Ill. 2010). "Under Illinois law, the interpretation of an insurance policy is a question of law." *Id.* (quoting *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 818-19 (7th Cir. 2008)).

Defendant responds that Mr. Hofbauer's testimony would not be offered as expert legal opinion on the interpretation of the General Casualty policy, but with respect to his personal involvement in the investigation of Plaintiff's Extra Expense and Business Income claims and General Casualty's ultimate coverage determination, and that, to the extent that Mr. Hofbauer's testimony may include his coverage opinions, it would be solely to explain the nature of his role in General Casualty's claim investigation and its ultimate conclusion. As noted in Plaintiff's motion, General Casualty waived the attorney-client privilege with respect to Mr. Hofbauer and, thus, Plaintiff had the opportunity to conduct discovery on the issue of Mr. Hofbauer's involvement.

Plaintiff's motion is denied. To the extent that Plaintiff is accusing Defendant of bad faith in its refusal to pay certain of Plaintiff's claims, Defendant is entitled to introduce evidence of its good faith in reaching its coverage conclusions. Such evidence might include a description of the claim-investigation process, e.g., what was done by each person involved as well as Defendant's reliance on the advice of counsel. Plaintiff, for example, intends to introduce evidence of Defendant's unreasonably low offers to settle the disputed claims as proof of Defendant's breach of the implied covenant of good faith and fair dealing. Defendant should be allowed to present evidence that it was acting in good faith in making the alleged unreasonable offers based on the advice of its counsel that it was not required to pay the same. That said, Plaintiff is entitled to a cautionary instruction to the jury that Mr. Hofbauer's opinions are being offered only to prove the Defendant's state of mind and not as instructions on the law.

**Date**: September 27, 2017

**Ronald A. Guzmàn**
**United States District Judge**