IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORDAN MOZER & ASSOCIATES, LTD., an Illinois corporation, | )<br>)<br>) |
| Plaintiff, | ) |
| | ) Case No. 14-cv-10264 |
| vs. | ) |
| | ) Hon. Ronald A. Guzmán |
| GENERAL CASUALTY COMPANY OF WISCONSIN, a Wisconsin corporation, | )<br>)<br>) |
| Defendant. | ) |

**RENEWED MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW**

Defendant General Casualty Company of Wisconsin ("GC") respectfully requests that the Court grant its Renewed Motion for Partial Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure ("Rule") 50(b), grant its Motion to Alter or Amend the Judgment pursuant to Rule 59(e), and vacate the November 2, 2017 Judgment entered in favor of Plaintiff Jordan Mozer & Associates, Ltd. ("JMA") pursuant to Rule 60.

**INTRODUCTION**

In this action, JMA seeks coverage under a first-party property policy (the "policy") issued to JMA by GC. After GC paid the full $1,132,507 limits of the policy to JMA following a March 2013 dust incident and an additional $536,177 for lost business income, JMA sought additional coverage under the policy's "extra expense" and "business income" coverages. GC denied that it owed any additional amounts to JMA under the policy.

At the close of JMA's case-in-chief, GC orally moved for partial judgment as a matter of law under Rule 50(a) on three discrete issues: (1) JMA failed to put forth any evidence that it "incurred" approximately $965,000 that it sought as "extra expense" for the time its employees

1

allegedly spent working on relocating JMA after the dust incident ("employee costs"); (2) JMA failed to put forth any evidence that it "incurred" $306,166 that it sought as "extra expense" for additional build-out costs at its new property (the Laflin Street property), which JMA had not yet purchased or contracted to purchase ("future build-out costs"); and (3) JMA failed to put forth any evidence to support its claim for over $1 million in lost retail sales as part of its business income claim. The Court orally denied GC's motion with respect to the third issue above, and took GC's motion under advisement with respect to the "employee costs" and "future build-out costs" issues. The Court denied the remaining portions of GC's motion for partial judgment as a matter of law on November 7, 2017.

In its closing argument, JMA asked the jury to return a verdict in its favor and award it $2,084,721 for its business income claim, which included $1,067,000 for lost retail sales and $1,017,721 for "core business" business income. Additionally, JMA asked the jury to award it $2,063,909 for its extra expense claim. The jury awarded JMA $278,752 for its "core business" business income claim, $0.00 for its lost retail sales claim, and $1,111,964.64 for its extra expense claim.

Pursuant Rule 50(b), GC now renews its motion for partial judgment as a matter of law with respect to "employee costs" and "future build-out costs" previously raised in GC's motion for partial judgment as a matter of law. GC respectfully asks the Court to find that JMA failed to submit to the jury a legally sufficient evidentiary basis upon which the jury could have awarded any amount to JMA for the claimed $965,000 employee costs or the $306,166 future build-out costs. Accordingly, and pursuant to Rule 59(e), GC requests that the Court amend the jury's verdict and find that as a matter of law the *maximum* amount JMA could have recovered for its extra expense claim was $792,744.

In addition, on November 2, 2017, the Court entered a judgment in favor of JMA and closed the case. However, On November 7, 2017, JMA filed a motion "seeking judgment in its favor on Count V of Plaintiff's Complaint" seeking relief under Section 155 of the Illinois Insurance Code ("Section 155") as well as prejudgment interest.[1] Because JMA is seeking Section 155 relief, there is no final judgment in this matter either for purposes of execution or appeal. In any event, however, to avoid any uncertainty, the Court should, pursuant to Rule 60, vacate its November 2, 2017 judgment. Once that judgment is vacated and the Court resolves all outstanding issues (including this motion and JMA's Section 155 motion), it can then enter a single judgment which will be final for purposes of both execution and appeal.

## LEGAL STANDARDS

Rule 50(b) permits a party to renew a prior motion for judgment as a matter of law after the jury has returned its verdict, and the court may direct the entry of judgment as a matter of law on the issues presented notwithstanding the jury's verdict. *See* Fed. R. Civ. P. 50(b). When undertaking a Rule 50(b) inquiry, the court should consider all the evidence in the record and construe the facts in favor of the party that prevailed at trial, including drawing all reasonable inferences in favor of the non-movant. *See May v. Chrysler Grp., LLC*, 716 F.3d 963, 971 (7th Cir. 2013). The prevailing party, however, must have presented the jury "with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000). This means there "must have been more than a mere scintilla of evidence to support the verdict. *Id.* (internal quotation marks omitted). *See Passananti v. Cook Cty.*, 689 F.3d 655, 659 (7th Cir. 2012) (the court must examine the evidence "to determine whether the jury's verdict could reasonably be based on that

---

[1] GC is separately filing a response to JMA's request for Section 155 relief and prejudgment interest contemporaneously with this motion.

3

evidence"). After reviewing the evidence in the proper light, if the nonmoving party did not introduce enough evidence to support its claim, then judgment as a matter of law is warranted. *Massey*, 226 F.3d at 924; *see May*, 716 F.3d 963 at 971 (The court's "job is to decide whether a highly charitable assessment of the evidence supports the jury's verdict or if, instead, the jury was irrational to reach its conclusion.").

## ARGUMENT

### I. JMA FAILED TO SUBMIT ANY EVIDENCE TO THE JURY TO SUPPORT ITS CLAIM FOR EMPLOYEE COSTS

#### A. JMA Did Not "Incur" Employee Costs

As part of its extra expense claim, JMA sought almost $965,000 for employee costs that JMA labeled "Extra Expense Hours." Plaintiff Exhibit ("PX") 48 at Ex. B. JMA calculated this component of its claim by taking the hourly rates that JMA typically charges its clients for each JMA employee's work and multiplying that by the number of hours each employee allegedly spent planning, facilitating, and managing JMA's move to the Laflin Street property. *Id.*

Under the policy's extra expense coverage, GC "will pay necessary Extra Expense you *incur* during the 'period of restoration' that you would not have *incurred* if there had been no direct physical loss or damage to property at the described premises." Docket Entry ("DE") 1-1 at 13 (emphasis added). Similarly, the policy also states that "Extra Expense means *expense incurred*." *Id.* (emphasis added). Thus, to recover under the Policy, JMA must have incurred its employee costs as an expense and as a result of the dust incident. JMA failed to satisfy both these requirements.

The terms "incur" and "incurred" are not defined by the policy. The Court, however, addressed the meaning of "incurred" in its final jury instructions. The Court instructed the jury: "In order to recover any claimed Extra Expense, Jordan Mozer and Associates must prove that

4

each claimed extra expense was a necessary expense *incurred* by Jordan Mozer and Associates to avoid or minimize the suspension of business." DE 137 at 26 (emphasis added). The Court further instructed the jury: "An expense is 'incurred' when the insured has become liable for the expense. Becoming liable for an expense does not require one to have actually paid it." *Id.* The Court's jury instruction on "incurred" is consistent with Illinois law.

In this case, however, JMA did not demonstrate that it became liable for these employee costs. That is because those costs were part of JMA's ordinary business expenses, and JMA did not become liable for, or pay, anything over and above what it would otherwise have paid its employees. In the context of a similar extra expense provision, the Illinois Appellate Court, in *Chatham Corp. v. Dann Insurance*, 812 N.E.2d 483, 489 (Ill. App. Ct. 2004), noted that "incur," though undefined, "has a plain, ordinary, and popular meaning of 'to become liable or subject to through one's own action; [to] bring or take upon oneself.'" *Id.* (quoting Random House Webster's Unabridged Dictionary 969 (1998)). The court applied this definition and held that shipping costs that the insured's customer had to pay unexpectedly as a result of the loss incident (and not paid by the insured itself) were not "incurred" by the insured and not recoverable as an extra expense. *Id.* This same principle applies here.

At trial, Jordan Mozer testified that all of JMA's employees that assisted with the move were salaried employees and did not receive hourly compensation. While JMA's employees tracked the time they dedicated to relocating the business, Mozer testified that their salaries did not fluctuate or change based on the hours they spent assisting with the relocation. Moreover, the JMA employees received neither a bonus for helping move nor hourly-rate payments beyond their normal salary. In addition, Karen Mozer and Jeff Carloss—two full time, salaried JMA employees—similarly testified that they received no additional compensation for time they

5

dedicated to the relocation. Carloss corroborated Mr. Mozer's testimony that JMA did not pay any amount beyond the JMA employees' regular salaries for the time the employees spent relocating. Put simply, JMA offered no evidence that it has paid—or at any time became liable to pay—any additional amounts to its employees for time spent related to the dust incident or relocating. Even under the most expansive reading of the jury instructions, there was no "expense" for which JMA became "liable" related to the employee costs portion of its extra expense claim. Thus, JMA did not "incur" any expenses for its employees' time that could ever receive coverage under the extra expense provision of the policy. *See Lytle v. Country Mut. Ins. Co.*, 41 N.E.3d 657, 662 (Ill. App. Ct. 2015) (because insured homeowner did not repair or replace his damaged home, he did not "incur" a depreciation expense and could not recover for that expense under the policy).

GC first raised the issue that JMA did not "incur" these employee costs in its motion for partial summary judgment. DE 44-1 at 4-5. Since that time, JMA has continually failed to produce any evidence to support its argument that it "incurred" the employee costs it claimed. At trial, JMA again failed to put forth any evidence that it "incurred" extra expenses for its employee costs (and, in fact, acknowledged it *did not* incur any extra employee costs). To withstand a Rule 50(b) motion, JMA was obligated to present the jury with a legally sufficient amount of evidence to support its claim for employee costs as extra expense. Instead, JMA presented no evidence that its employee costs were "incurred," which is a precondition to extra expense coverage under the policy. DE 1-1 at 13. Thus, no rational jury could have based its extra expense verdict on JMA's purported $965,000 employee costs. Accordingly, judgment as a matter of law in favor of GC is warranted.

6

### B. Basic Principles of Contract Interpretation Instruct That JMA Could Not Recover Employee Costs as Extra Expense Since They Are Part of Business Income

In construing insurance policies, courts use "common sense and the usual tools of contract interpretation." *Miller v. St. Paul Mercury. Ins. Co.*, 683 F.3d 871, 874 (7th Cir. 2012) (Illinois law). The court's primary objective is to ascertain and give effect to the intention of the parties as expressed in the agreement. *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 286 (Ill. 2006). In performing this task, a court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *See id.* Where the provisions are clear and unambiguous, the policy is enforced according to its plain meaning. *See Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill. 1991).

"Insurance policies are subject to the same rules of construction applicable to other types of contracts." *Morgan v. CUNA Mut. Ins. Soc.*, 611 N.E.2d 112, 114 (Ill. App. Ct. 1993). One of those rules is that, "where both a general and a specific provision . . . address the same subject," the more specific provision controls. *Grevas v. U.S. Fid. & Guar. Co.*, 604 N.E.2d 942, 944 (Ill. 1992). In *Grevas*, the insured sought coverage for rental loss under an insuring clause that contained two sections, one addressing reduction or loss of earnings and the other addressing reduction or loss of rents. *Id.* at 943-44. The court determined that the section addressing rents "control[led] the outcome of [the] case" because it was "more specific" than the general gross earnings section. *Id.* at 944.

*Grevas* controls this case. The definition of "business income" includes "ordinary payroll expenses" for salaried employees. DE 1-1 at 12. Because any employee costs that JMA actually has incurred are specifically included in the policy's business income provision, that provision controls and such employee costs cannot be recovered as extra expense. *See id.* at 944;

7

*see also, e.g.*, *Cont'l Cas. Co. v. Polk Bros., Inc.*, 457 N.E.2d 1271, 1274 (Ill. App. Ct. 1983) (recognizing the "well settled rule of construction that where a document contains both general and specific provisions relating to the same subject, the specific provision is controlling"); *Aeroground, Inc. v. CenterPoint Props. Trust*, 738 F.3d 810, 813 (7th Cir. 2013) (stating that under Illinois law, "[t]he more specific provision of a contract governs where it arguably conflicts with a more general provision").

Here, JMA took the position that the time spent by its employees to locate, design, and build out the Laflin Street property, and to pack and relocate its business, *could* have been spent on activities that would generate income for the business. PX48 at Ex. B. Thus, JMA argued, the value of that time should be considered a covered extra expense. However, both JMA's retained expert, William Polash, and GC's accountant retained to adjust JMA's claim, Curtis Reynolds, testified that JMA employees' lost time that could have been used to generate income for JMA was, in fact, considered and accounted for as part of JMA's lost business income claim. As a result, because the business income provision controls the question of the compensation to which JMA was entitled resulting from lost employee time, JMA cannot recover those costs as extra expense. Any recovery beyond the amount accounted for in its lost business income claim would be unfounded, speculative, and would serve entirely as a windfall to JMA. This runs counter to settled principals of both insurance policy and general contract interpretation. Accordingly, judgment as matter of law in favor of GC is warranted.

C. **Waiver And Estoppel Cannot Save JMA's Claim For Employee Costs**

A significant element of JMA's case was that the policy's limitations on extra expense coverage should be overlooked because GC made representations about coverage to JMA that resulted in waiver or estoppel. DE 80 at 83-86. JMA, however, failed to support its case with

8

sufficient evidence to support applying waiver or estoppel to the employee costs component of its extra expense claim. Thus, JMA's argument fails as a matter of law—because waiver and estoppel cannot create coverage—and as a matter of fact—because JMA presented insufficient evidence to support its claim that anyone from GC represented to JMA that employee costs for which JMA never became liable would be reimbursed as an extra expense.

Under Illinois law, while estoppel and waiver may be applicable in certain limited circumstances to preclude an insurer from enforcing certain conditions or limitations to coverage, it is unequivocal that estoppel may not be used to create coverage where it does not exist. *See, e.g.*, *Lytle*, 41 N.E.3d at 663 ("The insurance policy at issue provides coverage only for incurred costs, and the equitable principles of waiver and estoppel may not be used to create or extend coverage where none exists."); *Schuster v. Occidental Fire & Cas. Co. of N. Am.*, 30 N.E.2d 458, 468 (Ill. App. Ct. 2015) ("In any event, this policy did not cover leased vehicles and estoppel is not a basis for creating coverage for which Diamond neither contracted nor paid a premium."); *Nationwide Mut. Ins. Co. v. Filos*, 673 N.E.2d 1099, 1103 (Ill. App. Ct. 1996) ("Illinois courts have followed the general rule that the doctrine of estoppel cannot be used to create primary liability or to increase coverage provided under an insurance policy."). Here, JMA asked the jury to violate this basic principle by arguing that the provisions of the extra expense insuring agreement should be ignored because of waiver or estoppel. Illinois law does not permit such a result.

Even if waiver or estoppel could expand the scope of coverage, JMA failed to furnish evidence to satisfy the requirements for either waiver or estoppel with respect to the employee costs. Waiver and estoppel share a critical common element—that there must be some statement or conduct on the part of the insurer regarding the scope of coverage under a policy. *See*

9

*Chatham*, 812 N.E.2d at 494-95 ("To constitute a waiver, the words or conduct of an insurer must be inconsistent with the intention to rely on the requirements of the policy. . . . To establish estoppel in an insurance context, the insured must show: (1) that he was misled by the acts or statements of the insurer or its agent[.]") JMA, at best, presented evidence to the jury of hypothetical statements GC's claims handler, Craig Dobbs, made early in the claim process regarding the *potential* for coverage for employee time, under certain circumstances. JMA failed, however, to offer any evidence that Dobbs, or any other representative of GC, represented that GC would pay for JMA's employee time at their standard billable rates as part of extra expense coverage.

In contrast to JMA's argument, the evidence submitted actually shows GC investigated the claim under a non-waiver agreement and/or subject to a reservation of rights. At Jordan Mozer's first meeting with GC in April 2013, he signed a non-waiver agreement that acknowledged GC maintained all its rights and defenses while investigating the claim. PX6. Then, in October 2013, GC issued a reservation of rights letter to JMA specifically addressing JMA's extra expense claim. PX38. Therefore, not only did JMA fail to offer sufficient evidence to support waiver/estoppel on its claim for employee costs as extra expense, the evidence submitted to the jury established that GC never relinquished its rights to enforce the terms of the policy as written. Accordingly, JMA's claims of waiver and estoppel were not sufficiently supported by the evidence submitted to the jury to save JMA's claim for employee costs as extra expense, and judgment as a matter of law in favor of GC is warranted.

## II. NO EVIDENCE SUPPORTS JMA'S FUTURE BUILD-OUT COSTS

JMA also asked the jury for $306,166 in extra expense coverage for future build-out costs. PX52A. This $306,166 includes fixtures and furnishings that JMA intends to purchase in

10

the future to outfit the Laflin street property. *Id.* As Jeff Carloss testified, JMA has not made any of these purchases, been invoiced for the purchases, entered any contracts for purchase, or otherwise incurred an obligation to pay the $306,166 in future build-out costs. While JMA may have future plans and intentions to purchase these items, for the reasons discussed above, these amounts have not been incurred and are not recoverable as extra expense. JMA—by its own admissions—has not become liable for these expenses. Indeed, allowing recovery of these expenses would effectively read the "incurred" requirement out of the policy and would thus violate another basic rule of contract interpretation. *See Dolezal v. Plastic & Reconstructive Surgery, S.C.*, 640 N.E.2d 1359, 1366 (Ill. App. Ct. 1994) (a "well-settled rule[] of contract construction" is "that all provisions are presumed to have been inserted for a purpose, and that a contract should be interpreted to give meaning and effect to each provision contained therein").

Moreover, "[t]he party claiming damage bears the burden of proving those damages to a reasonable degree of certainty." *See TAS Dist. Co., Inc. v. Cummins Engine Corp., Inc.*, 491 F.3d 625, 632 (7th Cir. 2007). "[B]asic contract theory requires that damages be proved with reasonable certainty and precludes damages based on conjecture or speculation." *Valenti v. Mitsubishi Motor Sales of Am., Inc.*, 773 N.E.2d 1199, 1203 (Ill. App. Ct. 2002). Alleged damages that are incurred after the date of trial are inherently speculative and are generally not recoverable. *See Myers v. Mundelein Coll.*, 771 N.E.2d 1113, 1116 (Ill. App. Ct. 2002) ("Illinois law clearly proscribes claims for damages that have not yet occurred, so-called 'future damages.'"); *see also Lewis v. Loyola Univ. of Chi.*, 500 N.E.2d 47, 51 (Ill. App. Ct. 1986) ("In Illinois, however, the damages awarded upon breach of an employment contract are limited to such damages as plaintiff may have accrued up to the date of trial, and damages beyond that date are disallowed due to their speculative and uncertain nature."). JMA provided no evidence to the

11

jury that would have permitted it to conclude with a reasonable degree of certainty that JMA incurred the future build-out costs. Accordingly, there was not even a scintilla of evidence upon which a rational jury could have based its extra expense verdict on JMA's future build-out costs, and judgment as a matter of law is warranted.

### III. THE COURT SHOULD AMEND THE JURY'S VERDICT

Rule 59(e) permits a party to file a "motion to alter or amend a judgment," which must be filed no later than 28 days after the entry of the judgment. *See* Fed. R. Civ. P. 59(e). A court can grant a motion to amend a judgment under Rule 59(e) "to correct a manifest error of law or fact." *Duran v. Town of Cicero*, 653 F.3d 632, 642 (7th Cir. 2011); *see BASF AG v. Great Am. Assur. Co.*, No. 04C6969, 2006 WL 2859620, at *3 (N.D. Ill. Oct. 3, 2006) (to be successful on a Rule 59(e) motion, a movant "must clearly establish either a manifest error of law or fact"). A Rule 59(e) motion is not intended to advance arguments that should have been presented to the court prior to judgment, but rather, it is intended to ask the court to "reconsider matters properly encompassed in a decision on the merits." *Torres v. City of Chicago*, No. 12 C 7844, 2016 WL 4158914, at *20 (N.D. Ill. Aug. 5, 2016) (internal quotation marks omitted). When a jury's verdict is erroneous as a matter of law and the plaintiff was only entitled to a certain amount of damages as a matter of law, the court may reduce the jury's verdict. *See McKinnon v. City of Berwyn*, 750 F.2d 1383, 1392 (7th Cir. 1984); *Haluschak v. Dodge City of Wauwatosa, Inc.*, 909 F.2d 254, 257 (7th Cir. 1990); *see also Hillmann v. City of Chicago*, 66 F. Supp. 3d 1109, 1115-16 (N.D. Ill. 2014) ("It is appropriate to reduce an award when necessary to prevent departure from the evidence presented at trial.").

At closing argument, JMA asserted that it was entitled to $2,063,909 for its extra expense claim.[2] For the reasons set forth above, JMA failed to submit a legally sufficient amount of evidence to the jury to support $1,271,164.75 of the $2,063,909 it claimed in extra expenses. Based on the evidence, no rational jury could conclude that JMA "incurred" $964,998.75 in employee costs for which it never paid or became liable and $306,166 in future build-out costs which JMA had not purchased or even contracted to purchase at the time of trial. Because JMA did not "incur" these amounts, they do not come within the insuring agreement for extra expense coverage under the policy, and cannot form the bases for JMA's extra expense recovery.

Therefore, the jury's $1,111,964.94 award on JMA's extra expense claim is improper as a matter of law and should be amended by the Court. Based on JMA's own extra expense amounts that it submitted to the jury, the maximum that JMA could have possibly recovered for its extra expense claim is $792,744.25. Accordingly, pursuant to Rule 59(e), GC asks this Court to amend the jury's verdict for JMA's extra expense claim to $792,744.25.

## IV. THE COURT SHOULD VACATE ITS NOVEMBER 2, 2017 JUDGMENT

On November 2, 2017, the Court directed the deputy clerk to enter judgment in this case after the jury returned its verdict. DE 136. On November 7, 2017, JMA filed "Plaintiff's Motion For Judgment On Count V Pursuant To Section 155 Of The Illinois Insurance Code," seeking judgment on Count V of the Complaint alleging vexatious and unreasonable conduct on the part of GC in violation of 215 ILCS 5/155 ("Section 155 Motion"). DE 141. The Court has since set a briefing schedule on JMA's Section 155 Motion and indicated it will rule by mail. DE 144.

---

[2] JMA asked the jury to award it $2,063,909 for its extra expense claim. Employee costs accounted for $964,998.75 of JMA's extra expense claim (PX48 at Ex. B), and future build-out costs accounted for $306,166 of its extra expense claim. PX52A. Together, employee costs and future build-out costs accounted for $1,271,164.75 of JMA's $2,063,909 extra expense claim. GC contends that JMA failed to present any evidence that it "incurred" the employee costs or future build-out costs, and therefore, JMA's maximum extra expense recovery is limited to $792,744.25.

13

Notwithstanding the jury's November 2, 2017 verdict, it is evident that all of JMA's claims have not been resolved.

Since JMA's outstanding claims are still being adjudicated, GC requests that the Court vacate the Court's November 2, 2017 judgment. Because the case has not fully resolved, entry of final judgment was error. Illinois law (which controls here) requires that, to be enforceable, a judgment must be final. *See Philips Med. Sys., Int'l B.V. v. Bruetman*, 791 F. Supp. 731, 732 (N.D. Ill. 1992); *Gen. Tel. Co. of Ill. v. Robinson*, 545 F. Supp. 788, 791 (C.D. Ill. 1982). "The test of finality is whether the district judge has finished with the case." *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006). Similarly, Section 1291 of the U.S. Code provides that the Court of Appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. A "final decision" is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 775 (7th Cir. 2015) (internal quotation marks omitted). Likewise, Rule 54(b) states that "any order or other decision . . . that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties." Fed. R. Civ. P. 54(b).

The jury's November 2 verdict did not determine all of the claims JMA asserted against GC in this lawsuit. The verdict did not determine JMA's Section 155 claim, which is now before the Court on JMA's motion. In its Section 155 Motion, JMA seeks attorneys' fees and a statutory punitive award of $60,000, as well as other fees and costs pursuant to Section 155. DE 141. The relief JMA seeks has the potential to substantially alter any final judgment in this case. Moreover, JMA's motion does not simply seek the resolution of a collateral issue such as an award of attorneys' fees for a prevailing party pursuant to a contract or a statute. *Cf. Ray Haluch*

14

*Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng's & Participating Emp'rs*, 134 S. Ct. 773, 781 (2014). Instead, JMA is seeking application of a penal statute that requires the Court to find that GC acted in a manner that was "vexatious and unreasonable" based upon the totality of the circumstances. Because that issue remains pending, there is no final judgment for purposes of either enforcement or appeal.[3] *See Gen. Ins. Co. of Am. v. Clark Mall Corp.*, 644 F.3d 375, 380 (7th Cir. 2011) (pending Section 155 claim made judgment non-final). Nonetheless, in the interest of clarity, GC requests that the Court vacate its November 2, 2017 judgment. Once the Court resolves all remaining issues in the case, the Court can then enter a final, enforceable, and appealable judgment.

## CONCLUSION

For the reasons set forth above, GC respectfully requests that the Court enter an order granting its Renewed Motion for Partial Judgment as a Matter of Law, and find that no reasonable jury could have had a legally sufficient evidentiary basis to find for JMA on the issues of: (1) extra expense coverage for employee costs; and (2) extra expense coverage for future build-out costs. As a result, and pursuant to Federal Rule of Civil Procedure 59(e), GC asks the Court to amend the jury's extra expense verdict awarded in favor of JMA and against GC to $792,744.25 as a matter of law. Finally, GC asks the Court to vacate its November 2, 2017 judgment pursuant to Rule 60.

                                                Respectfully submitted,

                                                LEAHY, EISENBERG & FRAENKEL

                                                By:   /s/ *Scott Wing*
                                                        One of Attorneys for Defendant

---

[3] In any event, pursuant to Federal Rule of Appellate Procedure 4(a)(4), GC's filing of its post-trial motion extends the time for filing any appeal until thirty days after the Court resolves that motion.

15

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| **Bradley Paul Nelson**<br>Schopf & Weiss LLP<br>One South Wacker Dr., 28th FL<br>Chicago, IL 60606<br>(312) 701-9300<br>(312) 701-9335<br>nelson@sw.com | **Howard B. Randell**<br>Leahy, Eisenberg & Fraenkel<br>33 West Monroe Street<br>Chicago, IL 60603<br>(312) 368-4554<br>(312) 368-4562<br>hbr@lefltd.com |
| **Nicholas A. Gowen**<br>Schopf & Weiss LLP<br>One South Wacker Drive<br>Chicago, IL 60606<br>(312) 701-9300<br>(312) 701-9335<br>gowen@sw.com | **Thomas J. Finn**<br>Leahy, Eisenberg & Fraenkel, Ltd.<br>33 West Monroe Street<br>Chicago, IL 60603<br>(312)368-4554<br>(312) 368-4562<br>tjf@lefltd.com |
| **Scott Wing**<br>Leahy, Eisenberg & Fraenkel<br>33 West Monroe Street<br>Suite 1100<br>Chicago, IL 60603<br>(312) 368-4554<br>(312) 368-4562<br>sw@lefltd.com | |

Scott Wing
LEAHY, EISENBERG & FRAENKEL, LTD.
Attorneys for Defendant, General Casualty Company of Wisconsin
33 W. Monroe Street, Suite 1100
Chicago, Illinois 60603-5317
Email: sw@lefltd.com
Tel. (312) 368-4554
ARDC #: 6298780
\\lefpl\Prolaw Files\Documents\QBE\16454\PLEADINGS\455598.docx